In re:

AMAVALISE F. JARAMILLO,                                       Case no. 21-10306-t11

       Debtor.

## OPINION

Before the Court is whether to confirm Debtor's Second Amended Chapter 11 Plan. While several objections to the plan were filed, Debtor resolved them before confirmation and submitted a proposed confirmation order. The Court took the order under advisement to determine whether, under Tenth Circuit law, a subchapter V plan can be confirmed as a consensual plan if some classes of creditors do not vote. The Court concludes that it can. While reviewing that issue, however, the Court discovered a number of significant problems with Debtor's plan. In this opinion the Court outlines the law on the legal issue presented, identifies the major problems with the plan, and denies confirmation without prejudice.

## Facts

The Court finds:[1]

Debtor filed this case on March 15, 2021, under chapter 13 of the Bankruptcy Code. He filed a chapter 13 plan with his schedules and SOFA.

Creditor Cathy Trei filed a nondischargeability proceeding in June 2021, alleging that a $350,000 prepetition judgment she obtained was nondischargeable under §§ 523(a)(2), (4), and/or

---

[1] The Court takes judicial notice of the docket in the main case and the related adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

(6).[2] Debtor thereafter sought to convert the case to subchapter V of chapter 11, alleging he would have difficulty paying his nondischargeable debts in chapter 13. The Court converted the case on February 9, 2022.

Debtor's first subchapter V plan had significant problems. At the final confirmation hearing the Court denied confirmation and ordered Debtor to file a new plan. The order contained a detailed list of issues to address.

Debtor filed the current plan by the Court-ordered deadline. The Court entered an order setting pre-hearing deadlines and a final confirmation hearing for September 19, 2022. The plan drew a number of objections. By the morning of the confirmation hearing, however, all objections had been resolved and Debtor submitted a proposed confirmation order. The proposed order would have confirmed the plan under § 1191(a) as a consensual plan.

Debtor filed a tally of ballots the week before the confirmation hearing. The tally describes "unsecured creditors" as having claims totaling "$80,000-$90,000" and belonging to class 8. The tally states that no ballots were received from Rio Arriba County, United Business Bank, Debtor, Anais Weckert, or the unsecured creditors. The tally misdescribes Ms. Weckert as a Class 7 creditor (she is Class 2); misdescribes Rio Arriba County as a Class 2 creditor (it is not classified); and misdescribes general unsecured creditors as Class 8 creditors (they are not classified).

Despite the failure to classify general unsecured creditors, the plan proposes to treat them as follows:

> After payment of the foregoing claims, the Debtor will pay, on a pro-rata basis, allowed general unsecured claims at fifteen (15) cents on the dollar.

---

[2] All statutory references are to 11 U.S.C.

-2-
Case 21-10306-t11    Doc 142    Filed 09/22/22    Entered 09/22/22 16:08:42 Page 2 of 10

The Debtor owes $80,903.72 in student loans. The plan does not classify, treat, or even mention the student loan debt. It is not clear how Debtor intends to deal with his student loans.

Debtor has not indicated what kind of ballot he sent to the unclassified creditors. The official ballot form requires each ballot to indicate what class of claim is being voted. No unclassified creditors voted on the plan.

Debtor is the buyer under two real estate contracts. The plan states that the contracts are executory and will be assumed. Despite this proposed treatment, the plan classifies the contract counterparties as creditors (classes 3 and 4).

Ms. Trei filed a $395,449.35 proof of claim. She asserted that $150,000 of the claim was secured by judgment liens. Almost a year after she filed her proof of claim, Ms. Trei settled her adversary proceeding against Debtor. Under the settlement, Debtor agreed to pay Ms. Trei $135,000, without interest, in monthly payments of $1,200.

Ms. Trei's is separately classified in the plan and is impaired. The proposed treatment of her claim is consistent with the settlement.

Only three ballots were cast, by Ms. Trei and the real estate contract counterparties. They all voted for the plan.

The plan apparently provides for a discharge upon confirmation.[3]

## Discussion

A.  If an Impaired Class "Actually Accepts" a Subchapter V Plan, Nonvoting Classes Will be Deemed to Have Accepted the Plan for Confirmation Purposes.

---

[3] There is some confusion about this because the plan goes on to say that the discharge would be under § 1192. Section 1192 provides that the discharge order is entered after completion of plan payments, not on confirmation. The section deals with discharge in "cramdown" cases, not consensual cases confirmed under § 1191(a).

At the confirmation hearing the Court raised the question whether the failure of a class to vote on the plan is a deemed acceptance of the plan for the purposes of §§ 1129(a) and 1191(a). Having reviewed the statute and the case law on the issue, the Court concludes that it is. In the Tenth Circuit the rule is that, to satisfy § 1129(a)(10), a debtor must get the affirmative or "actual" vote of at least one impaired class. *See In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263, 1267 (10th Cir. 1988); *In re Akbari-Shahmirzadi*, 2015 WL 8329208, at *8 (D.N.M.). If that requirement is met, classes of creditors that do not vote are deemed to have accepted the plan for the purpose of § 1128(a)(8). *Ruti-Sweetwater*, 836 F.2d at 1267-68; *In re Akbari-Shahmirzadi*, 2015 WL 13650076, at *5 (D.N.M.) (magistrate judge opinion).

Section 1191(a) requires the satisfaction of both §§ 1129(a)(8) and (a)(10) to confirm a consensual plan. Recent cases have held that *Ruti-Sweetwater's* "deemed acceptance" rule for § 1129(a)(8) applies in subchapter V. *See, e.g., In re Robinson*, 632 B.R. 208, 220 (Bankr. D. Kan. 2021) (cited and applied "*Sweetwater's* binding precedent that a nonobjecting and nonvoting creditor is deemed to have accepted a chapter 11 plan under § 1129(a)(8)"); *In re Olson*, 2020 WL 10111637, at *2 (Bankr. Utah) (same); and *In re Desert Lake Group, LLC*, no. 20-22496, doc. 114 (Bankr. D. Utah Sept. 30, 2020) (unpublished) (same). Here, an impaired class (Ms. Trei) voted to accept the plan, satisfying § 1129(a)(10). Under *Ruti-Sweetwater*, any remaining classes that did not vote are deemed to have accepted the plan. The plan therefore can be confirmed as a consensual plan under § 1191(a) if the other plan confirmation requirements are met been met.

It is worth noting that *Robinson* confirmed a subchapter V plan even though no votes had been cast, so there was no actual acceptance by an impaired class. Had *Robinson* been a "regular" chapter 11 case, the plan could not have been confirmed. *Sweetwater*, 836 F.3d at 1267. *Robinson* held that the "distinction between whether a creditor's acceptance is being determined under

-4-

§ 1129(a)(8) or (a)(10) is blurred in subchapter V." 632 B.R. at 219. Because of that, the *Robinson* court did not require the actual acceptance of an impaired class. *Id.* Here, an impaired class voted for the plan, so the Court need not decide whether a subchapter V plan can be confirmed under § 1191(a) if no impaired class actually votes for the plan.

Applying *Ruti-Sweetwater's* deemed acceptance rule to subchapter V cases is consistent with the realities of modern bankruptcy practice for individuals and small businesses, where many general unsecured creditors (e.g., credit card companies) do not vote. There is nothing wrong with not voting, but the confirmation process should not be derailed as a result.

B.  The Plan Did not Classify and/or Treat a Number of Claims.

The plan did not classify Debtor's general unsecured creditor claims, the Rio Arriba County secured claim, or the nondischargeable student loan claim. Without classification, these creditors could not vote properly or know what they were voting on. A chapter 11 plan must provide for the classification and treatment of all pre-petition claims. *See, e.g., In re Garlock Sealing Technologies LLC*, 2017 WL 2539412, at *16 (W.D.N.C.) ("[t]he Plan satisfies Section 1123(a)(1) because it adequately and properly identifies and classifies all claims and interest"); and *In re Regional Bldg. Systems*, 251 B.R. 274, 281 (Bankr. D. Md. 2000) ("Chapter 11 requires that all claims (other than certain unsecured priority claims) be placed in classes"). Because three classes of claims were not classified, the plan cannot be confirmed.

The failure to classify and treat Debtor's student loan debt is particularly troubling. The debt appears to be nondischargeable under § 523(a)(8). Was Debtor attempting to lump the student loan debt with the general unsecured claims and discharge it? That would be highly improper. *See, e.g., United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271-72 (2010). If not, the failure

to separately classify and treat the student loan debt is a significant omission. Either way, the plan cannot be confirmed in its current form.

C. <u>The Proposed Treatment of General Unsecured Claims is Vague</u>.

The plan proposes to pay general unsecured claims "on a pro-rata basis . . . fifteen (15) cents on the dollar," but only "after payment of the foregoing claims. . . ."[4] The plan does not say when this dividend would be paid or over what period of time. An amended plan should state the proposed timing and amount of each payment to the class.

Further, the plan should list the members of the general unsecured creditor class and the amount of their claims. It is unclear whether Ms. Trei, the IRS, New Mexico Taxation and Revenue, Nusenda, or ECMC are in the general unsecured claims pool, and/or for what amounts. General unsecured creditors need to know this information before they can evaluate feasibility and fairness and decide whether to support the plan.

Finally, if any claim will be objected to, that should be disclosed, and a deadline for filing the objection set.

D. <u>The Proposed Payments to the IRS and NMTRD Should be Clarified</u>.

The plan proposes to pay the IRS $620 per month on its $3,447 priority claim. That seems excessive. For example, if the priority claim were amortized over five years at 5% interest, the monthly payment would be about $58. The third amended plan should specify the monthly payment to the IRS, the priority amount, the interest rate, and the payment term. The plan should do the same for the NMTRD priority claim.

E. <u>The Treatment of Ms. Trei's Claim Should be Clarified</u>.

---

[4] The "foregoing claims" are priority claims, administrative expenses, and secured claims.

In their settlement, Debtor agreed to pay Ms. Trei $1200 per month for 112 ½ months, without interest. That is not stated clearly in the plan, and should be. Furthermore, the other settlement terms should be restated in the plan so voting creditors know the terms, and also so there is no ambiguity or inconsistency about the treatment of Ms. Trei's claim.

F. The Treatment of Ms. Weckert's Claim Should be Clarified.

Ms. Weckert appears to have claims for prepetition, postpetition, and postconfirmation child support. The third amended plan should state the amounts of the claims and how each will be treated. If an adjustment in the monthly payment will be made after their child's 18th birthday, the date and amount of the adjustment should be disclosed.

G. The Real Estate Contracts Should Not be Classified.

Section 365 allows a debtor to assume or reject executory contracts. Debtor's real estate contracts with April DeVore and Teresa Marquez were listed on Debtor's schedules as executory contracts. Debtor's plan proposes to assume both contracts and pay them as agreed. The plan states that no cure is necessary. Given this treatment, it is not proper to classify the contract interests of Ms. Devore or Ms. Marquez as prepetition claims and allow them to vote on the plan. *See, e.g., In re Greystone III Joint Venture*, 995 F.2d 1274, 1281 (5th Cir. 1991), cert. denied, 506 U.S. 821 (1992) ("A party to a lease is considered a "creditor" who is allowed to vote, 11 U.S.C. § 1126(c), only when the party has a claim against the estate that arises from *rejection* of a lease") (emphasis in original); *In re Mount Carbon Metropolitan Dist.*, 242 B.R. 18, 38–9 (Bankr. D. Colo. 1999) (executory contract holders whose contracts are to be assumed are not entitled to vote; such holders whose contracts will be rejected are entitled to vote as unsecured creditors); *In re Motel Associates of Cincinnati*, 50 B.R. 196, 200 (Bankr. S.D.N.Y. 1985) (implying that, subject to proper notice to the franchisor, the debtor can disallow the franchisor's plan vote because the debtor proposes to

assume the franchise agreement); *In re Deming Hospitality, LLC*, 2013 WL 1397458, at *7 (Bankr. D.N.M.) (citing *Greystone*, *Mount Carbon*, and *Motel Assoc.*).

H.   Other.

   1.   Plan term. Apparently the plan term is 7 years. That should be stated in an introductory sentence in Article II of the plan.

   2.   History of debtor's business operations. The discussion of Debtor's history of operations should be moved from Appendix A to the first page or two of the plan. The discussion should include how long Debtor has been an attorney, where he attended law school, the year he graduated, and a history of his practice. The discussion should include a recap of Debtor's annual income for 5 years pre-petition (2016-20) as well as average annual operating expenses of his law practice for those years.

   3.   Projected Disposable Income Versus Fixed Payments. The plan provides that Debtor shall submit his "projected disposable income necessary for the performance of this plan to the Debtor's creditors and shall pay the sums set forth herein . . . ." This language is confusing. First, Debtor is not able to submit projected disposable income, only actual income. Second, it appears that Debtor proposes to pay creditors fixed amounts, not whatever might be available from his disposable income. At a minimum, the proposed payments to Ms. Trei, the IRS, New Mexico Taxation and Revenue, Rio Arriba County, and United Bank are fixed. The dividend to general unsecured creditors (15%) also appears to be fixed. Perhaps what Debtor means to say is that the fixed payments are equal to or greater than his projected disposable income. The language should be modified to avoid inconsistency or confusion.

   In a related matter, the estimated monthly payment of $5,600 likely needs to be updated.

4. <u>Payment of administrative expenses</u>. Debtor should estimate his administrative expenses through plan confirmation, including attorney and trustee fees. Debtor should disclose any agreements he has reached with his counsel or the subchapter V trustee regarding payment of administrative expenses. If monthly payments have been agreed to, they should be disclosed and included in the feasibility calculation. All references to payments "outside the plan" (*see, e.g.*, Appendix B) should be deleted. Language about payment of administrative expenses should be in the body of the plan, not Appendix B.

5. <u>Separate section for claims treatment</u>. The Court's June 28, 2022, order included the requirement that the amended plan not put the treatment of claims in the classification section. Despite this, Appendix B to the Plan (Classification of Claims) has a section entitled "Treatment." In addition, the treatment of priority tax claims is on the back of Appendix B. All language regarding claim treatment should be moved to the plan and separated from the classification of claims. Treatment should be discussed class by class, in numerical order. Also, it is better practice to classify claims in the body of the plan rather than an appendix.

In addition, paragraph 3 of Article V is inconsistent with the treatment of United Bank, Rio Arriba County, and Ms. Trei. To the extent the paragraph is intended to treat unknown secured claims, there should be a class of "other" secured claims. Paragraph 3 could then be modified to treat that class.

Paragraph 4 of Article should be revised to state that it is treating the class of general unsecured claims, whatever class number is assigned to such claims.

6. <u>Feasibility</u>. The third amended plan should amend Appendix E to include a separate line item for Debtor's monthly and annual living expenses; a breakdown of the law office operating

expenses; and a discussion whether Debtor's estimated 26% tax burden includes Medicare, Medicaid, Social Security, health insurance, and state taxes.

7. <u>Discharge</u>. Article XV should be modified to make clear whether Debtor seeks a discharge on confirmation or after all plan payments have been made.

8. <u>Definitions</u>. The last portion of Article XVI, paragraph 1 should be deleted, as there are no additional definitions.

9. <u>Non-Standard Provisions</u>. Article XIX should be deleted. It is required only in chapter 13 plans.

## Conclusion

Tenth Circuit law provides that, so long as one impaired class actually votes in favor of a chapter 11 plan (as Ms. Trei did here), other classes will be deemed to have accepted the plan for § 1129(a)(8) purposes if no one in the class voted. The "deemed acceptance" rule applies in subchapter V. In this important respect, Debtor's plan is confirmable under § 1191(a). However, the plan cannot be confirmed for the reasons discussed above. Debtor should file a third amended plan that addresses the deficiencies. A separate order denying confirmation will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: September 22, 2022
Copies to: counsel of record